Thank you, Your Honor. May it please the Court, Kristen Thayer on behalf of Appellant Barry Dooley, I'd like to reserve two minutes for rebuttal and I'll keep track of my time. The District Court found that Mr. Dooley committed a Grade A violation of his supervised release for a new state offense based on a Nevada statute that, one, does not appear in any revocation petition document, and, two, does not legally qualify as a crime of violence to, therefore, constitute a Grade A violation offense. Either error requires reversal and remand for the Court to readjust the Grade violation downward. I'll turn first to the lack-of-notice issue, the due process violation. The revocation Addendum 1, Allegation 1, lists only one Nevada statute, the coercion statute. The evidence at the hearing, however, the government's evidence did not prove coercion, either misdemeanor or felony, and that's at the opening brief at page 19 to 20 that has those record citations. So in closing argument, the government started adding additional offenses, arguing that Dooley committed felony coercion as charged and also battery with a deadly weapon and battery by a probationer and battery by a probationer without a deadly weapon. The District Court accepted felony coercion and battery with a deadly weapon as the two offenses that qualified as Grade A violations. And that's a due process violation. Dooley was not on notice that battery with a deadly weapon was an additional State offense that he was alleged to have committed while on supervised release. This is reversible error under this Court's binding precedent, Javier, which has been around since, I believe, 1998. This has been the standard that notice needs to be effective. It must be in writing and it must be in the revocation petition. The defendant must be able to identify the offenses that he is charged, the State law offenses he is charged or alleged to have committed while on supervised release. And this is especially critical for a new law violation condition allegation because that condition is so broad. It's that condition of supervised release is any new State, Federal, or local offense. So while it's not a per se rule that the State statute or ordinance needs to be listed in the allegation, in most cases, Javier indicates that it should be in there, especially in this case where there were the government at the end argued that multiple new State offenses had occurred instead of just the felony coercion that was in the allegation. What would you have done differently? Yes, Your Honor. For the prejudice aspect of this, similar to Javier, I would proffer to this Court an appeal that which this Court accepted that the defense counsels proffer on appeal, that Mr. Dooley could have investigated this battery allegation which occurred according to the petition three days prior to the alleged coercion, and actually at the hearing it came out that it was potentially a week before. Mr. Dooley could have, instead of just challenging the credibility of the accuser Dooley could have looked into an alibi, interviewed more witnesses. The focus of the hearing was on the coercion, which is evident from the defendant's questioning and the defense's closing arguments, was all about that factually coercion was not proven, and especially felony coercion was not proven. So the as Javier says, the defense could have tailored and actually broadened its defense to specifically challenge the battery and the coercion offenses instead of focusing just on coercion. And that's the prejudice against Mr. Dooley, and that shows the violation. And that's what we would argue requires reversal. You don't even reach the rest of the issues if or I'm sorry, you don't reach the rest of the issues in the analysis if this Court agrees that there was a due process violation as to the notice, that the only grade A allegation made or offense that could qualify as grade A is in that single allegation in the first addendum. Nothing else alleged against Mr. Dooley constituted a grade A violation. So that would require reversal. And then additionally, we would ask that the Court reverse on the calls, the allegations that Mr. Dooley dissuaded the accuser from testifying because the government didn't prove that he dissuaded the accuser from reporting a violation when the evidence was about her testimony. All of that would require ---- Sotomayor, on that second one, boy, I think you've got some uphill work, meaning the transcript of that telephone call certainly looks to me as though he's trying to tell her, you know, don't come in and testify. That sounds like witness tampering. Yes, Your Honor. And it would be under setting aside the affirmative defense, which was raised and not addressed by the district court. But looking straight at that, the call, yes, it was ---- but it was talking about her testimony. It was not talking about reporting. There's two different subsections in that statute. One, I believe it's D-1, goes to reporting a violation. D-2 goes to testifying. And the government, if the government was ---- if actually the government could only prove that he interfered with or attempted to interfere with her testimony, it should have charged under that. So that's just a ---- the government failed to prove as charged for those two allegations in the second addendum. And ---- Now, this assault was referred to, that is, the assault with the hammer. Yes. Was referred to in which of the, I'm going to call them pleadings, two addendums and an original motion? Yes, Your Honor. It was the first addendum, allegation one. That's at the record at 315 in our excerpts. And it said that that was a battery, correct? No, the allegation did not. It said it was an assault? No, it did not use those words, Your Honor. In fact, the focus of that allegation is it looks like it's pulled from the police report from the February 2nd officer, the officer who arrived on the 2nd when the Ms. Fiume-Freddo called about the coercion incident that day. Yeah. And that's what perspective it's written from, is what happened that day. And then it mentions that she also stated Dooley hit her with a hammer some days prior. So factually, that is in the allegation. There's no dispute about that. The dispute and the problem, the notice problem, is that there's no indication that battery was the allegation the government was moving on. It was the coercion event for which there was a police report and a call, and the and most importantly, the statute cited for coercion only. The government did not ever cite the battery statute in this allegation. Even though it had a chance to, it filed two addendums it could have amended. It could have corrected that and given duty notice. Is battery a lesser included offense of coercion in Nevada? No, Your Honor. They're entirely different proof, yes. And especially with the deadly weapon, coercion doesn't require that. And turning briefly to the battery with a deadly weapon as a matter of law is not a crime of violence. The most glaring proof that it's not is that Nevada very uniquely has included in its deadly weapon definition a device used to mark any part of a person with paint or any other substance. And it's undisputed that in Nevada you can commit simple battery with a mere inoffensive touching, however de minimis, and if the deadly weapon can be something such as a paintbrush, under the plain language of the statute, Nevada's battery with a deadly weapon statute is just categorically overbroad and not a crime of violence under the force clause. But any notice that you received was a notice that it was done with a hammer. Yes. Factually, that was in the allegation. And if it was done with a hammer, that meant that it had to be a crime of violence, would it not? Because the hammer is not a weapon unless it is used in a certain way. And by using it as a weapon to inflict damages or injury, it becomes a dangerous or deadly weapon, does it not? A hammer, without being used for that purpose, is not a dangerous weapon. It's the use that makes it a dangerous weapon. And you're arguing that even though you got some notice that it was done with, that the assault was done, the battery was done with a hammer, then you argue that that's not a dangerous or a crime of violence. Now, factually, it has to be, doesn't it? No, Your Honor, because while the government's evidence could have proven a battery with a deadly weapon factually, that's just the first step of the crime of violence inquiry. The second step is the categorical approach that's applied to many sentencing enhancement areas in this Court's law, which only looks at the statute. It is the you are forbidden, everyone is forbidden from looking at the facts of the case. It's the purely legal categorical approach from Taylor to Camps, Mathis, that controls once the district court has found that factually a new offense has been committed, you turn to the statute. So you're saying that under no circumstances could he be accused of a battery that would constitute a violation of the conditions of probation which prohibit him from committing a crime because it's not a categorical crime of violence in the Nevada statute? No, Your Honor, he could be charged with, if he had proper notice, he could have been charged with that. And if it was proven, it could have been found. But the problem, the crime of violence inquiry is what makes this a grade A violation. So it would be the difference between a B or an A. And to get from a B to an A, it must be the court must undertake that legal analysis, which is the categorical approach to determine whether it's an overbroad statute that cannot legally qualify. So factually, yes, but legally, that's our problem in this case, if this Court reaches the crime of violence inquiry. Thank you. I see I'm lost. No, we've taken you over time, but we will give you a chance to respond. Thank you, Your Honor. Good morning. May it please the Court. Adam Flake for the United States. I want to make one correction, and I don't mean to make defense counsel a sinner for a word, but she said the government could have charged the defendant with X, Y, and Z offense. Probation, which is an arm of the Court, is the party that filed the charging document in this case. Who prosecutes it? The government prosecutes it, of course. Well, when you got the file and you're ready to go, and you realize that the charge was that there were no charges listed under this, was it the Second Amendment? I think it's the First Amended Petition. The First Amended, right. You could have just amended it. You could have said, Judge, we're going to do this is what we're going to do. We could have, Your Honor. Straight up. We could have, Your Honor. And if they needed time to prepare for it, the Court could have granted them, you know, a week, two weeks, five days, and we wouldn't be here. That's correct, Your Honor. And our case law is pretty clear. It — certainly in Javier, we wish that probation had specified the statute in its Don't blame it on probation. Don't blame it on probation. Petition. Don't blame it on the probation department. I'm not trying to blame it on probation, but I am trying to be clear about what happened, which is they do file these, and they don't show them to us before they file them. I mean, it seems like your argument is the one that's been hinted at here today, which is that if you read the allegations, it's pretty obvious that battery or assault under Nevada law would be an appropriate criminal offense that he may have violated. That is our argument, Your Honor. And I don't mean to — I'm not trying to sound like a weasel and put it off on probation. I'm just trying to be clear about what actually happened. And I think — I mean, I think the Court does understand our argument. I think that it's worth noting that during cross-examination of one of our witnesses, defense counsel specifically asked whether this conduct, stabbing somebody in the eye, would constitute battery with a deadly weapon. I don't think that they — I don't think that this case comes within Javier for that reason. I don't think there was confusion about what was actually being charged. I'd like to — just because it's interesting, I'd like to address that paintbrush issue very briefly and just argue to the Court that this case is a very good example of why we have the rule, the Supreme Court's rule from Duenas-Alvarez, which is legal imagination is not sufficient. The statute that they're citing says it's illegal to bring onto school property any device that can be used to mark a body with paint or any other substance. As I read that statute, that would very obviously include a tube of lipstick because you can twist the bottom of the tube of lipstick and use it to mark your body. The idea that Nevada thinks that a tube of lipstick is a deadly weapon requires a lot of legal imagination. I don't — I haven't seen any case law of anyone being prosecuted under that statute for bringing a tube of lipstick to school, which would clearly come within the literal language of the statute. I think that's why the Supreme Court in Duenas-Alvarez said more than legal imagination is required. The defendant has to point to a realistic probability of the statute being applied in this fashion, and they can't make that showing in this case. If the Court doesn't have any further questions, I'll submit. Okay. Would you put them there on the clock, please? Thank you, Your Honor. Just quickly to rebut what the government's position is on the paintbrush issue, it's not that we think Nevada law has this broad of a deadly weapon definition. It is the explicit statutory words. The Nevada legislature adopted this definition of deadly weapon by incorporation to a school statute. And that's not legal imagination. It's the plain language. It's very simple language, actually, that doesn't require interpretive gloss because it is so broad. And we are not under Duenas-Alvarez. We are under Chavez-Solis, which was cited in the reply brief. And this Court's decision on Bonk and Grizzle as well, which was cited in the 28J and favorably cited in the Tenth Circuit case in the 28J letter I filed last week. When the plain language shows the statute is overbroad and the crime is overbroad, you don't cite to a case. You don't need to cite to a case because this Court is bound by what the legislature has set forth in the state's law. Okay. Thank you, Your Honor. Thank you. Thank you. Thank both sides for your arguments. United States v. Dooley, submitted for decision.
judges: Leavy, W. Fletcher, Paez